UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RLO GROUP LLC,

       Plaintiff,

   -against-

MICHAEL T. FONSECA,

       Defendant.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
23-cv-7861 (DLI)(SIL)

**DORA L. IRIZARRY, United States District Judge:**

   On October 20, 2023, RLO Group LLC ("Plaintiff") filed this action against Michael T. Fonseca ("Defendant") alleging violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, and asserting a state law conversion claim. Compl. ¶ 6, Dkt. Entry No. 1. Plaintiff then filed an amended complaint, which did not raise any new or additional causes of action, but added only a few new factual allegations. *See generally*, Am. Compl. ("AC"), Dkt. Entry No. 20. Subsequently, Defendant filed a motion to dismiss for lack of subject matter jurisdiction due to lack of standing and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. *See*, Mot. to Dismiss ("Mot."), Dkt. Entry No. 21. Plaintiff opposed contending, *inter alia*, that it has standing, and Defendant replied. Opp'n, Dkt. Entry No. 22; Reply, Dkt. Entry No. 23, respectively.

   For the reasons set forth below, Defendant's motion is granted. This action is dismissed because Plaintiff lacks Article III standing, thus depriving the Court of subject matter jurisdiction. Accordingly, as the Court "lacks the power to adjudicate the merits of the case," it will not address Defendant's motion for dismissal for failure to state a claim pursuant to Rule 12(b)(6).[1] *Carter v.*

---

[1] The Court notes that whether the harm Plaintiff alleges is actionable at all pursuant to the SCA, is a statutory interpretation question of first impression in this circuit.

*HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) (internal citations omitted).

## BACKGROUND[2]

This action stems from a New York divorce proceeding between Defendant and his now ex-wife, Lauren Fonseca ("Ms. Fonseca"). AC ¶ 14. During the pendency of the divorce proceeding, without Ms. Fonseca's knowledge or consent, Defendant accessed her personal computer and email account. *Id.* ¶ 15. Plaintiff alleges that Defendant specifically sought out its corporate records via Ms. Fonseca's personal email account. *Id.* ¶ 18.

Plaintiff is a limited liability company formed by non-party, Richard L. O'Toole. *Id.* ¶ 9. On March 1, 2015, Richard O'Toole transferred a 30% equity stake in RLO to Ms. Fonseca. *Id.* ¶ 10. Defendant searched Ms. Fonseca's email account for a message from her brother, an RLO member, that included a spreadsheet of RLO investments. *Id.* ¶ 27. Plaintiff alleges Defendant took a photograph of the spreadsheet, which he then attached as an exhibit to a motion filed in the separate divorce proceeding. *Id.* ¶ 24. At the divorce proceeding, under oath, Defendant admitted having done this. *Id.* ¶ 27. Plaintiff had not made the information Defendant accessed publicly available. *Id.* ¶ 20. Nor was Defendant given prior access or authorization to obtain or disclose Plaintiff's confidential records. *Id.* ¶ 30. Following the unauthorized access and disclosure, Plaintiff brought this action.

## LEGAL STANDARD

Defendant moved to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. Standing challenges may be brought under both rules, although "the proper procedural route [for such a challenge] is a motion under Rule 12(b)(1)." *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6

---

[2] The facts below are taken from the Amended Complaint and any incorporated documents. They are accepted as true as required at this stage of the case.

2

(2d Cir. 2006) (internal citations omitted). "The distinction is important because a typical dismissal under Rule 12(b)(6) . . . is an adjudication on the merits with preclusive effect." *Id.*

Subject matter jurisdiction is a threshold issue. Therefore, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the Court first must address the 12(b)(1) motion. *Sherman v. Black,* 510 F. Supp.2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990)). It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation marks omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Id*.

In reviewing Rule 12(b)(1) motions to dismiss based on insufficiency of the complaint, the Court must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Carter*, 822 F.3d at 57 (relying on *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). The Court's task is to "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quotation marks and alterations omitted).

## DISCUSSION

**I.    Standing**

Defendant argues that Plaintiff failed to allege plausibly an injury-in-fact establishing Article III standing for its SCA claim because Plaintiff did not suffer any tangible pecuniary harm to its business interests. *See*, Mot. at 11–12. Defendant asserts that Plaintiff's only injury is an alleged violation of privacy and there are no applicable common law analogues in this case. *Id*. at 13–15. In response, Plaintiff primarily frames its injury as privacy based, and asserts the common

3

law analogues of: (1) intrusion upon seclusion; (2) public disclosure of private facts; and (3) trespass to chattels.  *See*, Opp'n at 12–18.  The Court finds that Plaintiff has failed to allege an injury-in-fact establishing standing.

To establish standing, Plaintiff must show that: (1) it suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury probably was caused by Defendant; and (3) the injury probably could be redressed by judicial relief.  *See*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  While Congress may create a cause of action by statute, mere violation of that statute does not give rise to standing to sue under Article III because an injury in fact still is required.  *See, TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *See also, Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016), *as revised* (May 24, 2016) (holding that Congress may elevate harms where none existed before, but a statutory violation, on its own, will not establish a concrete harm).

There are two common types of concrete injuries in fact, tangible and intangible.  *See, TransUnion*, 594 U.S. at 425.  Tangible harms generally are the easiest to identify as they encompass physical or monetary injury to the plaintiff.  *Id*.  Intangible harms are those that bear a "close relationship" to injuries traditionally recognized as providing a basis for lawsuits.  *Id*.  For courts to inquire whether a purported intangible harm bears that close relationship, a plaintiff must identify a common law analogue.  *Id*. at 424–25.  The Supreme Court has identified several concrete intangible harms such as "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id*. (holding that the 1,853 class members who had their credit reports distributed to third parties with false Office of Foreign Assets Control terrorist alerts suffered intangible harm with a close analogue to defamation, but also holding that the 6,332 class members whose credit reports were not distributed did not suffer a concrete harm).  The Second Circuit has held that, "it matters not whether New York common law recognizes a tort," but rather "that the

4

intangible harm arising from [a defendant's action] bears a relationship to an injury with a close historical or common-law analogue." *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 286 (2d Cir. 2023) (internal quotation marks omitted).

Plaintiff initially contends that, because it is a "person aggrieved" pursuant to the SCA, and the SCA codifies a legal right, then the SCA itself confers Article III standing. Opp'n at 12–13, 17. It is disputed whether Plaintiff is a "person aggrieved" pursuant to the SCA. However, even assuming, *arguendo*, that Plaintiff can bring suit, this argument was foreclosed following *Spokeo* and *TransUnion*. The Supreme Court's edict is clear: a statutory violation on its own will not establish a concrete harm. *See, Spokeo*, 578 U.S. at 341–42. Therefore, merely alleging a violation of the SCA is insufficient to establish a concrete harm.

The Second Circuit has followed suit in this regard. In *Bohnak v. Marsh & McLennan Companies, Inc.*, the Second Circuit was confronted with a suit in which the plaintiff's personally identifiable information was disclosed to unauthorized third parties. *See*, 79 F.4th at 285. The circuit held that the plaintiff had standing because the intangible harm bore a close relationship with the common law claim for public disclosure of private facts. *Id.* at 286. Notably, the statutory violation itself was not sufficient to establish standing, but the intangible privacy harm was concrete because it had a "close relationship" with a historical analogue. *Id.*; *See also, Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024) (holding that the plaintiff had standing pursuant to the Video Privacy Protection Act because his intangible privacy harms were related closely to the common law analog of public disclosure of private facts.).

Other circuits have concurred. In *Seale v. Peacock*, a case strongly relied on by Plaintiff, the Tenth Circuit concluded that a violation of the SCA by itself did not establish standing, finding instead that the intangible privacy harm was related closely to traditional common law privacy claims such as the disclosure of private information and intrusion upon seclusion, which

5

established standing. *See*, 32 F.4th 1011, 1120–21 (10th Cir. 2022) (citing *TransUnion*, 594 U.S. at 425). Similarly, in *Jones v. Bloomingdales.com, LLC*, the Eighth Circuit held that privacy harms can confer standing if there are allegations of actual interception of private information. *See*, 124 F.4th 535, 539–40 (8th Cir. 2024) (holding that plaintiff's allegations do not show that her privacy was invaded). Thus, it is well established that a mere violation of the SCA is insufficient to confer standing. Accordingly, while the common law analogue need not be an exact duplicate, Plaintiff must identify a common law analogue that bears a close relationship to its asserted injury/harm. *TransUnion*, 594 U.S. at 424.

    A.    **Intrusion upon Seclusion**

Intrusion upon seclusion is the most difficult common law analogue to evaluate in this case and raises an issue of first impression in this circuit, *i.e.*, does intrusion upon seclusion and the SCA protect the same type of "in kind harm," whereby a business is conferred the right to privacy in another's personal email?

As noted above, the Supreme Court in *TransUnion* explained that courts should assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. 594 U.S. at 424 (citing *Spokeo*, 578 U.S. at 341). The Supreme Court and several circuit courts have cited favorably to then Seventh Circuit Court of Appeals Judge Amy C. Barrett's analysis in *Gadelhak v. AT&T Services Inc* of what constitutes a "close relationship" between a statute and a traditional harm under the common law, especially with respect to intrusion upon seclusion. *Id*. (citing to *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)); *See also*, *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022) (citing to *Gadelhak's* analysis); *Six v. IQ Data Int'l, Inc.*, 2025 WL 583306 at *3 (9th Cir. Feb. 24, 2025) (same). *Gadelhak* examined whether a plaintiff had a concrete harm pursuant to the Telephone Consumer Protection Act ("TCPA") after

6

receiving five unwanted text messages. *See*, 950 F.3d at 460. The Seventh Circuit held that the common law analogue of intrusion upon seclusion protected individuals from "irritating intrusions—such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff," which is precisely the harm Congress wished to make actionable via the TCPA. *Id*. at 462 (internal quotation marks omitted). Thus, the TCPA has a close relationship with the common law analogue of intrusion upon seclusion because the harm is the same "in kind" between the two. *Id*.

*Gadelhak* further held that courts look for a "close relationship" in kind, not degree. *Id*. Thus, the analysis is not whether a plaintiff would succeed on the common law tort, but whether the harm protected by the statute is merely of the same kind as the harm protected by the common law tort. "A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts . . . pose the same kind of harm that common law courts recognize . . . that Congress has chosen to make legally cognizable." *Id*. at 462–63. If a plaintiff cannot show that she has suffered a type of harm similar in kind to that recognized at common law, then she has not suffered a concrete injury. *See*, *Perez*, 45 F.4th at 822.

Courts have held that the SCA was designed to protect electronic communication users' "legitimate interest in the confidentiality of communications in electronic storage at a communications facility." *Hately v. Watts*, 917 F.3d 770, 783 (4th Cir. 2019) (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004)). Thus, the "SCA was enacted to extend to electronic records privacy protections analogous to those provided by the Fourth Amendment." *Kornotzki v. Jawad*, 2020 WL 2539073 at *2 (S.D.N.Y. May 19, 2020). Accordingly, the SCA provides a cause of action to protect against violations of the intangible harm of privacy. However, that is not the end of the analysis.

The tort of intrusion upon seclusion recognizes actions against a defendant who invaded

7

the private solitude of another. *See, Gadelhak*, 950 F.3d at 462. To state a claim for intrusion upon seclusion, a plaintiff must allege: (1) an intentional intrusion by a defendant; (2) upon the solitude or seclusion of another or his private affairs or concerns; and (3) the intrusion would be highly offensive to an ordinary, reasonable person. *See*, *Kornotzki*, 2020 WL 2539073 at *4; *See also*, Restatement (Second) of Torts § 652B (1977). Therefore, the tort squarely is aimed at protecting privacy.

Comparing intrusion upon seclusion to the SCA reveals a "close relationship" insofar as the privacy harm that the SCA was enacted to address is "in kind" to the privacy harm that the tort provides an action for. *See, Seale*, 32 F.4th at 1020 ("[T]he SCA provides recourse for invasions of privacy in the realm of electronic communications."). Defendant contends, however, that this case differs from other SCA cases, and even other intrusion upon seclusion cases, because, typically, it is the individual whose email or privacy was intruded upon that brings suit. *Id*. at 1017 (plaintiff brought an SCA action against defendant for accessing *plaintiff's* real estate platform); *See also*, *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 837 (8th Cir. 2015) (suit brought pursuant to the SCA alleging defendants accessed *plaintiff's* personal Gmail account); *Clare v. Clare*, 982 F.3d 1199 (9th Cir. 2020) (ex-wife brought suit against ex-husband pursuant to the SCA alleging he accessed *her* phone and email without permission); *Goodman v. Goodman*, 2022 WL 17826390 at *1–2 (S.D.N.Y. Dec. 21, 2022), *report and recommendation adopted*, 2023 WL 1967577 (S.D.N.Y. Feb. 12, 2023) (ex-husband brought suit against ex-wife alleging unauthorized access of the *plaintiff's computer's* hard drive).

Here, Plaintiff atypically alleges that Defendant accessed a non-party's personal email account, not Plaintiff's account. Compl. ¶ 15. Consequently, it was Ms. Fonseca's privacy that was intruded upon. As it was Ms. Fonseca's right to privacy that was violated, not Plaintiff's, Plaintiff's alleged privacy harm pursuant to the SCA is not "in kind" with intrusion upon seclusion.

8

Accordingly, there is no "close relationship" between the SCA and the tort. Ultimately, Plaintiff has not met its burden of showing that intrusion upon seclusion protects the privacy rights of third parties that do not suffer an intrusion upon their solitude or private affairs.

Plaintiff's standing argument implicitly relies upon an expectation of privacy in Ms. Fonseca's personal email account. As discussed *supra*, the SCA was enacted to extend privacy protections to electronic records analogous to those provided by the Fourth Amendment. *See, Kornotzki,* 2020 WL 2539073 at *2. It is well settled that privacy rights are personal rights. *See*, Restatement (Second) of Torts § 652I (1977) (an invasion of privacy is a personal right that cannot be maintained by other persons). Here, the right belongs to Ms. Fonseca, not Plaintiff. A review of Fourth Amendment law on this point is instructive because the SCA incorporates and extends Fourth Amendment law to electronic records.

In the context of Fourth Amendment protections, the Supreme Court has long established that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979). Additionally, Fourth Amendment rights are personal rights that may not be asserted vicariously. *See, Alderman v. United States*, 394 U.S. 165, 174 (1969). Here, Plaintiff voluntarily sent an email containing the corporate records to Ms. Fonseca's personal email account. AC ¶ 27. Accordingly, Plaintiff has no expectation of privacy in Ms. Fonseca's, a third party, personal email account.

Additionally, a review of the intrusion upon seclusion tort is instructive. *See, TransUnion*, 594 U.S. 413 at 424 (holding that "history and tradition offer a meaningful guide to the types of cases Article III empowers federal courts to consider."). Historically, intrusion upon seclusion did not provide a cause of action for just *any* privacy infringement, but rather it provided a cause of action for a privacy infringement where the plaintiff had an expectation of privacy. *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 877 (8th Cir. 2000) ("A legitimate

9

expectation of privacy is the touchstone of the tort of intrusion upon seclusion."); *See also, In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601–02 (9th Cir. 2020) (examining expectation of privacy for relief pursuant to intrusion upon seclusion and invasion of privacy). Therefore, as the harm that intrusion upon seclusion provides a cause of action for is consistent with the Fourth Amendment, the alleged privacy harm must be personal.

The Sixth Circuit in *Hawkins v. Richter* held that the plaintiff lacked standing for his SCA claim because the email accounts intruded upon belonged to the business, notwithstanding the fact that plaintiff was an administrator of the email accounts, because, "the [SCA] claims belong to [the company] and not him." *See*, 2018 WL 4042465 at *2 (6th Cir. July 6, 2018). Additionally, at common law, a corporation, partnership or unincorporated association has no personal right of privacy and, therefore, has no cause of action for any of the four common law forms of invasion, which includes intrusion upon seclusion. *See*, Restatement (Second) of Torts § 652I (1977); *See also*, *FCC v. AT&T Inc.,* 562 U.S. 397, 406 (2011) ("[T]he concept of personal privacy, at least as a matter of common law, did not apply to corporations.") (internal citation and quotation marks omitted).

It is Plaintiff's burden to establish the elements of Article III standing, and it has failed to establish a concrete harm. *See, Lujan*, 504 U.S. at 561. Plaintiff cited only to one case, *Bovino v. Macmillan,* wherein the plaintiff was not the individual or entity who had his/its email account intruded upon. Opp'n at 17; 28 F. Supp.3d 1170 (D. CO. 2014). First, this is a non-binding decision from a district court of another circuit. Notably, *Bovino* is distinguishable from this case because: (1) the standing issue raised centered around the determination of who were "persons aggrieved" pursuant to the SCA; and (2) the case predated the Supreme Court's opinions in *Spokeo* and *TransUnion*, which clarified that a mere violation of a federal statute (*i.e.*, the SCA) alone is insufficient to confer standing. *Id.* at 1175.

10

### B. Public Disclosure of Private Facts

Plaintiff also asserts the common law analogue of public disclosure of private facts. Opp'n at 16. The Second Circuit has made clear that public disclosure of private facts involves disclosure of private information to an unauthorized third party. *See*, *Bohnak*, 79 F.4th at 286 (Disclosure of private personally identifiable information to an unauthorized malevolent actor); *See also*, *Salazar*, 118 F.4th at 542 ("Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party."). The SCA applies to privacy intrusions, but not to the unauthorized disclosure of electronic records. *See, Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 232 (2d Cir. 2020) ("[T]he sort of trespass to which the [SCA] applies are those in which the trespasser gains access to information to which he is not entitled to see, not those in which the trespasser uses the information in an unauthorized way."). Therefore, the harm actionable pursuant to public disclosure of private facts is not in "in kind" with the harm actionable pursuant to the SCA.

Even assuming, *arguendo*, that the harm is "in kind," Defendant correctly contends that Plaintiff has not alleged plausibly that its data was exposed to an unauthorized third party. Mot. at 13. The amended complaint alleges that Defendant accessed and took photographs of confidential RLO corporate records that were referenced in his Nassau County, New York divorce proceeding. AC ¶ 23–24; Mot. 7–8. An officer of the court in a matrimonial action "shall not permit a copy of any of the pleadings, affidavits, findings of fact, conclusions of law, judgment of dissolution, written agreement of separation . . . testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney . . . of a party, except by order of the court." N.Y. Dom. Rel. Law § 235(1). Thus, in accord with the law, matrimonial actions are entitled to privacy except as otherwise ordered by the presiding court. Plaintiff does not allege that Defendant disseminated Plaintiff's records to an unauthorized third party or that the divorce

11

court allowed a non-party to obtain any information about the proceeding. *See generally*, AC. Accordingly, Plaintiff has failed to plead plausibly public disclosure of private facts.

    **C.    Trespass to Chattels**

The Court notes that Plaintiff alleges only infringement of privacy as to its SCA claim in its amended complaint. *See generally*, AC. The amended complaint does not allege any property rights violations under the SCA. *Id*. For the first time, in its opposition, Plaintiff asserts a purported violation of its property rights as a separate intangible harm stemming from Defendant's actions.[3] Opp'n at 18. While Plaintiff does not explicitly state the common law analogue, Plaintiff seems to assert trespass to chattels as the analogue for its property rights. *Id*. (using language such as "trespass" in connection with its property rights). It is inappropriate to raise new claims for the first time in opposition to a motion. *See, Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001). Doing so deprives Defendant of fair notice of the claim and the ability to challenge it. *Id*; *See*, Fed. R. Civ. P. 8(a). As such, Plaintiff's new violation claim is dismissed.

Nonetheless, on the merits, Plaintiff's improper violation of property rights allegation is unavailing. As discussed in section I(A), *supra*, when analyzing whether a close relationship exists between the common law analogue and the federal statute, courts look to whether the suffered injury is similar "in kind" not "in degree." *See, Gadelhak*, 950 F.3d at 462. Congress did not elevate protection of property rights as a legally cognizable injury pursuant to the SCA because the SCA was designed to protect electronic communication users' "legitimate interest in the confidentiality of communications in electronic storage at a communications facility." *Hately*, 917 F.3d at 783. Plaintiff's reliance on *Seale* is misplaced as the Tenth Circuit found standing based on the analogues of intrusion upon privacy, not trespass against chattels because the plaintiff did

---

[3] Plaintiff raises a state conversion claim as a separate cause of action, but not as a common law analogue to its privacy harm pursuant to the SCA.

12

not allege actual damages, which traditionally is required by the tort. *See*, 32 F.4th at 1020–21 (holding that actual damages are not required by common law privacy torts).

In addition, "[a] trespass to chattel may be committed by intentionally . . . using or intermeddling with a chattel in the possession of another," when "the chattel is impaired as to its condition, quality, or value." *Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 116 (2d Cir. 2023) (internal citation omitted). In its amended complaint, Plaintiff alleges that Defendant violated its privacy pursuant to the SCA. AC ¶ 41. Privacy rights are an intangible harm that is not "in kind" with the harm recognized by trespass to chattels, which involves impairment of the property. Notably, Plaintiff does not include any allegations of impairment in the condition, quality, or value of its corporate records. *See generally*, AC; *See also*, *Saba Cap. Cef Opportunities 1, Ltd.,* 88 F.4th at 116 (holding that the defendant's actions caused plaintiff's shares to diminish in value because its voting rights were encumbered). Therefore, Plaintiff has failed to establish an injury-in-fact pursuant to the SCA for purported harm to its property rights.

**II.     Supplemental Jurisdiction**

As the SCA claim is dismissed for lack of Article III standing, the Court declines to exercise its supplemental jurisdiction over the remaining state conversion claim. 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). The Second Circuit routinely has held that "in the usual case," courts generally will decline to exercise supplemental jurisdiction when all of the federal law claims are eliminated prior to trial. *See, Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

13

(1988)). Nonetheless, courts still must assess properly the § 1367(c)(3) factors when deciding whether to exercise supplemental jurisdiction. *Catzin*, 899 F.3d at 86.

After analyzing the values of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. This is not the "unusual case" in which the parties "vigorously litigated for years," involving significant discovery, extensive and complex dispositive motion practice, or dismissal of state claims on the eve of trial. *Id*. at 84–85 (finding abuse of discretion when the district court dismissed state claims on the eve of trial after significant litigation for years); *See also, Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (holding it was not an abuse of discretion when the district court exercised supplemental jurisdiction given that the parties had litigated for over six years and the case "would soon be ready for trial").

Here, this case is in its infancy. The Complaint was filed on October 20, 2023 and included in the Court's Magistrate Judge Pilot Program. *See*, Electronic Order dated Oct. 20, 2023. As the parties did not consent to the Magistrate Judge's full, dispositive jurisdiction, the case was reassigned to this Court on February 27, 2024. *See*, Electronic Order dated Feb. 27, 2024. Defendant was granted an extension until March 4, 2024, to answer, and instead moved to dismiss in lieu of an answer on March 4, 2024. Dkt. Entry No. 12. On March 25, 2024, Plaintiff filed an amended complaint in lieu of responding to the motion to dismiss, which was terminated as moot by the Court on March 26, 2024. Dkt. Entry No. 20; Electronic Order dated March 26, 2024. On April 24, 2024, Defendant moved to dismiss the amended complaint in lieu of an answer, which was fully briefed on June 17, 2024. Dkt. Entry Nos. 21, 22, 23.

A review of the docket reveals that extensive discovery has not been conducted in this case nor has discovery been certified as concluded, and no other substantive pretrial proceeding or motion practice has been conducted. Judicial economy would be served as the Court, in deciding

the instant motion, did not have to review extensive documents and evidence as would be required in summary judgment practice. The parties are not deprived of due process as § 1367(d) tolls the statute of limitations during the pendency of the federal suit. As such, Plaintiff can file its state claim in state court. *See, Artis v. D.C.*, 583 U.S. 71, 75 (2018). Additionally, New York law provides a longer period of time in which to file a dismissed supplemental state claim. *See, Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) (citing N.Y.C.P.L.R. § 205(a) (McKinney 1990)). Accordingly, the state law claim is dismissed without prejudice.

## **CONCLUSION**

For the reasons set forth above, the Court finds that Plaintiff lacks standing to bring this action. Accordingly, Defendant's motion to dismiss this action is granted for lack of subject matter jurisdiction and, as such, the Court need not address the merits of Defendant's motion to dismiss the complaint for failure to state a claim. The Court also declines to exercise supplemental jurisdiction over the remaining state law claim, which is dismissed without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       September 24, 2025

                                                                           /s/
                                                  DORA L. IRIZARRY
                                       United States District Judge